TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ROBERT J. KEENAN (Bar No. 151094)
Assistant United States Attorney
  UNITED STATES ATTORNEY'S OFFICE
  411 W. Fourth Street
  Suite 8000
  Santa Ana, California 92701
  Telephone: (714) 338-3597
  Facsimile: (714) 338-3708
  E-Mail:    rob.keenan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT
October 24, 2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MR___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 8:21-mj-00710 -DUTY |
| Plaintiff, | FINDING RE. PROBABLE CAUSE |
| v. | |
| PETER DAVID GOMEZ, | [Fed. R. Crim. P. 5(b)] |
| Defendant. | |

**FINDING RE PROBABLE CAUSE**

On the date and time noted below, Special Agent Trenton L. Shaffer of the U.S. Drug Enforcement Administration ("DEA") attested via telephone, in accordance with the requirements of Fed. R. Crim. P. 4.1, to the facts set forth in the criminal complaint submitted by the government regarding the probable cause arrest of defendant **PETER DAVID GOMEZ** ("defendant") on October 22, 2021.

1

Having reviewed the facts set forth in the complaint, a copy of which is attached hereto, the Court HEREBY FINDS that:

/__x__/ there **exists** probable cause for the arrest of defendant for a violation of 21 U.S.C. § 841(a)(1) (Distribution of Methamphetamine). Accordingly, IT IS HEREBY ORDERED that the defendant be held to answer for proceedings under Federal Rule of Criminal Procedure 5 (Initial Appearance) in this Court's Santa Ana courthouse on Monday, October 25, 2021.

/____/ there **does not exist** probable cause for the arrest of defendant for the alleged violation of 21 U.S.C. § 841(a)(1). Accordingly, IT IS HEREBY ORDERED that the defendant be discharged from custody on this charge forthwith.

IT IS SO ORDERED.

**DATED: October 24, 2021, at** __9:35 am__ ~~a.m.~~/~~p.m.~~.

_____
PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>PETER DAVID GOMEZ,<br><br>　　　　　　Defendant. | Case No. |

## CRIMINAL COMPLAINT
## BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, hereby state that the following is true to the best of my knowledge and belief. On or about the date of **October 22, 2021**, in the County of Orange, in the Central District of California, the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) | Distribution of Controlled Substance (Methamphetamine) |

This criminal complaint is based on these facts:

　　*See* the facts set forth in the attached affidavit

　☒　Continued on the attached sheet.

　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　*Complainant's Signature*

　　　　　　　　　　　　　　　　　　　　　　Trenton L. Shaffer, DEA Special Agent
　　　　　　　　　　　　　　　　　　　　　　　　*Printed Name and Title*

Attested to by the complainant via telephone in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date:　　October 24, 2021　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　　　　*Judge's Signature*

City and State:　Santa Ana, California　　　　　Pedro V. Castillo, U.S. Magistrate Judge
　　　　　　　　　　　　　　　　　　　　　　　　*Printed Name and Title*

AUSA: Robert J. Keenan // Cell: (213) 393-7762

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Trenton Shaffer, being duly sworn, declare and state as follows:

**TRAINING & EXPERIENCE**

1. I am an investigative and law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and I am empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in Title 18, United States Code, Section 2516. I am currently a Special Agent ("SA") with the Drug Enforcement Administration ("DEA"), Los Angeles Field Division, Los Angeles Field Division ("LAFD") and have been employed in this capacity since March 2020.

2. During the course of my employment, I have received comprehensive, formal instruction on such topics as drug identification, money laundering techniques, patterns of drug trafficking, complex conspiracies, the exploitation of narcotics traffickers' telecommunications devices, criminal law, surveillance, and other investigative techniques. I have initiated and assisted in investigations into the unlawful importation, manufacture, possession with intent to distribute, and distribution of narcotics (including cocaine, heroin, and methamphetamine), the laundering of narcotics proceeds, and conspiracies associated with narcotics offenses. In conducting these investigations, I have utilized a variety of investigative techniques and resources, including but not limited to surveillance, confidential sources, search warrants, telephone

toll analysis, undercover operations, and wire intercept communications analysis in Title III and California State wiretap investigations.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of a criminal complaint against **PETER DAVID GOMEZ** for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), namely, Distribution of a Controlled Substance (Methamphetamine).

4. This affidavit is offered for the limited purpose of establishing probable cause for the requested complaint. It does not, therefore, purport to set forth all of my knowledge of, or the investigation into, this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## PROBABLE CAUSE

5. The facts set forth in this affidavit are based upon my training and experience; recordings of communications and also text messages related to this investigation (which were conducted in Spanish), which have been reported to me either directly or indirectly; information from public agency databases; information I have received from other law enforcement agents in connection with this investigation; and, where noted, my personal observations and own knowledge of the investigation. Based on these sources of information, I am aware of the following:

A.  **October 19, 2021: DEA Agents Debriefed DEA Confidential Source**

6.  On October 19, 2021, DEA Special Agent Silvana Restrepo and I conducted a telephonic debriefing of a DEA Confidential Source (hereinafter referred to as "CS").[1]  The CS advised that s/he was in contact with an individual using the name "Primo," who is believed to be currently residing in Arizona.  The CS further advised that all telephone and electronic communications between the CS and Primo were electronically recorded.

7.  The CS further advised, in substance, as follows: The CS said that he had multiple communications with Primo via telephone and text messages between October 16 and October 17, 2021.  The CS explained that s/he contacted Primo and told him that s/he was still waiting to hear back about the "Ice" for the beers and the "F" for the headache.  The CS was using coded language and has advised that "Ice" refers to crystal methamphetamine, and "F" refers to fentanyl pills.  Primo told the CS that he had the "F" already secured, and that he was still waiting to hear back about the "beer and ice," again, referring to methamphetamine.  Primo said that he was going to

---

[1] The CS has previously provided information to the DEA. He has worked with the DEA for monetary compensation and adjustment of his immigration status. Agents and other law enforcement agencies have taken steps to corroborate information provided by the CS, and the information has proven to be credible. Due to computer problems, I have been unable to access defendant's rap sheet as of this writing, but I am informed and believe that the CS has prior convictions and/or arrests for the following: (a) aggravated assault with a deadly weapon and drug possession in 2000; (b) possession of narcotic drug in 2001; and (c) escape and failure to appear in 2008.

3

try to get the CS "fifty bags of ice for the party." Later that same day, Primo provided phone number 52-4531340747 ("Subject Telephone 1") to the CS. Primo instructed the CS to call Subject Telephone 1, and tell the user of Subject Telephone 1 that s/he was calling on behalf of Primo. Primo told the CS that the user of Subject Telephone 1 was referred to as "MICHOACANO."

8. On October 18, 2021, the CS contacted MICHOACANO over Subject Telephone 1. The CS said he was reaching out on behalf of Primo, and MICHOACANO said, in substance, that he had talked with Primo and negotiated a price of $850 in United States Currency per pound of methamphetamine. MICHOACANO told the CS to let him know when the CS needed the "stuff" (methamphetamine) so MICHOACANO could let Primo know.

B. **October 21, 2021: MICHOACANO and GOMEZ Arranged Methamphetamine Delivery in Calls with DEA Undercover Agent**

9. On October 21, 2021, a DEA Undercover Agent (hereinafter, "the UC Agent") called MICHOACANO over Subject Telephone 1. The UC Agent stated s/he was calling on behalf of Primo. The UC Agent stated that s/he would be picking up the "stuff" on October 22, 2021, and needed to know who s/he would be coordinating with. MICHOACANO and the UC Agent agreed that the UC Agent would pick up the methamphetamine in the Disneyland area (Anaheim, California). In response to MICHOACANO's question, the UC Agent advised him that s/he did not have WhatsApp. (Based on my training and experience, I know that many individuals engaged in criminal activity prefer to use

4

WhatsApp, as it is their belief that WhatsApp is a more secure means of communication versus traditional text messaging).

10. Later in the same day (October 21, 2021), the CS contacted MICHOACANO to advise that s/he had WhatsApp, and that MICHOACANO can contact the CS through WhatsApp so that the "errand" could get run, referring to the UC Agent picking up the methamphetamine.

11. At approximately 7:17 p.m., MICHOACANO sent a text message to the CS providing the telephone number "619-882-4901" (hereinafter, "Subject Telephone 2"). MICHOACANO advised that the user of Subject Telephone 2 was named, "David." (Agents later identified "David" as **Peter David GOMEZ** ("GOMEZ").) The CS then told MICHOACANO that s/he would give Subject Telephone 2 to the UC Agent.

12. At approximately 7:25 p.m., the UC Agent called GOMEZ over Subject Telephone 2. The UC Agent advised that s/he was calling to coordinate their meeting on October 22, 2021. The UC Agent advised GOMEZ that s/he could meet at approximately 10:00 a.m. GOMEZ later responded by asking the UC Agent if s/he could meet at approximately 12:00 p.m. GOMEZ asked the UC Agent if s/he had WhatsApp, to which the UC Agent respond that s/he did not. GOMEZ confirmed that they would be meeting in the Anaheim, Disneyland area, and asked the UC Agent for an address for the meeting location.

13. As the investigation proceeded, DEA anticipated a transaction in which the UC Agent would purchase two pounds of methamphetamine.

5

C.  **October 22, 2021: GOMEZ Delivered Approximately 30 Pounds of Methamphetamine to the UC Agent and was Then Arrested**

14. On October 22, 2021, at approximately 8:52 a.m., the CS called the UC Agent and advised him/her that GOMEZ had to run errands and would not be able to meet until 5:00 p.m. A short time later, the UC Agent called GOMEZ. GOMEZ told the UC Agent that he resides in Tijuana, Mexico; that it would take him approximately two hours to cross the border; and that he would call the UC Agent once he crossed the border.

15. At approximately 11:07 a.m., GOMEZ called the UC Agent and advised that he had crossed the border. GOMEZ also said that he was going to pick up the "passengers." Based on his/her training and experience, the UC Agent understood the term "passengers" to be coded language for the methamphetamine. The UC Agent told GOMEZ s/he had the "paper," which is coded language for money.

16. At approximately 11:36 a.m., GOMEZ sent a text message to the UC Agent to ask for the address of their meeting location. At approximately 3:28 p.m., the UC Agent sent a text message to GOMEZ with the address of 10912 West Katella Avenue, Anaheim, California 92804, which is the parking lot of a Walmart store.

17. At approximately 3:47 p.m., the UC Agent informed GOMEZ that s/he observed a red Kia driving nearby. (In a previous conversation, GOMEZ told the UC Agent that he was driving a red Kia. This vehicle was identified as a red Kia

Optima, bearing California license plate 8RAJ923). GOMEZ confirmed that he saw the UC Agent and parked next to him/her.

18. Upon their meeting, GOMEZ informed the UC Agent that the "stuff" was in the back of his car, inside of a box. GOMEZ grabbed the box from the trunk of his vehicle and handed it to the UC Agent. The UC Agent placed the box in the back of his/her vehicle. GOMEZ informed the UC Agent that he had "thirty pounds." The UC Agent told GOMEZ s/he only had money for two pounds because that is what was previously agreed upon. GOMEZ told the UC Agent that he was going to call his boss, and he then proceeded use his phone from within his vehicle.

19. The UC Agent then placed a telephone call to SA Kevin Novick and advised that methamphetamine was inside of his/her vehicle. The UC Agent further advised that GOMEZ said there were thirty pounds in the box.

20. DEA Agents then approached GOMEZ and arrested him without incident. The arrest occurred at approximately 3:50 p.m. on Friday, October 22, 2021.

D. **Post-Arrest Interview of GOMEZ**

21. Continuing on October 22, 2021, at approximately 6:36 p.m., I read GOMEZ his Miranda Rights. SA Novick witnessed the Miranda advisement and videoed it with his cellphone. GOMEZ acknowledged his rights and agreed to waive them and speak with me and SA Novick. The interview was conducted largely in English, which GOMEZ understands and speaks, and SA Novick asked or clarified some questions in Spanish.

7

22. During the interview, GOMEZ said the following, in substance and in part:

    a. GOMEZ said that he was contacted by PACHIS a/k/a "MICHOACANO" on the evening of October 21, 2021. GOMEZ stated that MICHOACANO offered GOMEZ $2,000 to drive across the border, pick up a box in San Ysidro, and drive it to the Los Angeles area. GOMEZ said that he agreed to pick up the box for MICHOACANO and deliver it to "a girl" a/k/a "Ana" in the Los Angeles area.

    b. Upon receiving the box in San Ysidro, GOMEZ was contacted by MICHOACANO, who said that the box contained "30 pieces." GOMEZ stated that he understood that the "30 pieces" were in reference to some type of drug, but did not know what drug it was. GOMEZ stated that once he had received the box, GOMEZ headed to the Disneyland area based on a previous conversation he had with Ana. GOMEZ stated that upon arriving at the address given to him by Ana, GOMEZ gave the box to Ana and Ana placed it in her car. GOMEZ noted that Ana said she only need "2 pieces." So, GOMEZ called MICHOACANO to confirm what GOMEZ was supposed to do. GOMEZ said that MICHOACANO told him that Ana would take all "30 pieces." GOMEZ said that he was placed under arrest shortly after this phone call with MICHOACANO.

**E. Seized Drug Evidence**

23. The box that GOMEZ delivered to the UC Agent contained 30 separate packages of a white crystalline substance, which, based on my training and experience, appears to be

methamphetamine. The packages were wrapped in plastic black plastic and also clear plastic. The drug evidence was weighed and found to have a gross weight (including box and packaging) of approximately 15.6 kilograms (i.e., 34.4 pounds).

## CONCLUSION

24. Based on the forgoing facts, I submit that there is probable cause to believe that **PETER DAVID GOMEZ** has committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), specifically, Distribution of a Controlled Substance (Methamphetamine).

Attested to by the complainant
via telephone in accordance
with the requirements of Fed.
R. Crim. P. 4.1 on this day,
October 24, 2021.

_____
PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE